UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL CORRALES, JR., a California resident,<br><br>Plaintiff,<br><br>v.<br><br>AMY DUTSCHKE, in her official capacity as the Regional Director of the Bureau of Indian Affairs, Sacramento, California; DEB HAALAND, in her official capacity as U.S. Secretary of Interior; and BRYAN NEWLAND, in his official capacity as Assistant Secretary of the Interior – Indian Affairs,<br><br>Defendants. | Case No.: 23-CV-1876 JLS (DDL)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>(ECF No. 11) |

Presently before the Court is the Motion to Dismiss ("Mot.," ECF No 11) filed by Defendants Amy Dutschke, Deb Haaland, and Bryan Newland (collectively, "Defendants"). Plaintiff Manuel Corrales, Jr., filed an Opposition to the Motion ("Opp'n," ECF No. 12), to which Defendants submitted a Reply ("Reply," ECF No. 13). The Court previously took this matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). *See* ECF No. 14. Having carefully considered the Parties' arguments and the law, the Court **GRANTS** Defendants' Motion.

/ / /

/ / /

# BACKGROUND[1]

Plaintiff, appearing pro se, is an attorney licensed in California.[2] *See* Complaint ("Compl.") ¶ 17, ECF No. 1. In December of 2007, he entered into a fee agreement (the "Fee Agreement") with the California Valley Miwok Tribe (the "Tribe"). *Id.* At that time, the Tribe was involved in a leadership dispute. *Id.* ¶ 4. Specifically, there was disagreement as to whether the Tribe's leader was Silvia Burley ("Burley") or Yakama Dixie ("Dixie"). *Id.* ¶ 18. Burley, who the Bureau of Indian Affairs ("BIA") had previously designated as a "person of authority" within the Tribe, *id.* at 30,[3,4] signed the Fee Agreement on the Tribe's behalf, *id.* ¶ 17.

The Tribe retained Plaintiff for the purpose of recovering tribal funds held by the California Gambling Control Commission (the "Commission"). *Id.* at 19. The Fee Agreement guaranteed Plaintiff both a fixed hourly pay rate and a percentage of the funds ultimately recovered from the Commission. *See id.* at 20–21. The Tribe paid Plaintiff his hourly rate for approximately five months, after which "payment was suspended and deferred" until the Commission released the withheld funds. *Id.* ¶ 17.

Meanwhile, in a letter dated November 30, 2009, Plaintiff asked the Secretary of the Interior (the "Secretary") to approve the Fee Agreement pursuant to 25 U.S.C. § 81. *See id.* at 15–16. In response, the Department of the Interior (the "Department") informed

---

[1] The facts alleged in Plaintiff's Complaint are accepted as true for purposes of Defendants' Motion. *See Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (holding that, in ruling on a motion to dismiss, courts must "accept all material allegations of fact as true").

[2] Ordinarily, courts have a duty to construe a pro se litigant's pleadings liberally. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). That liberal pleading standard, however, does not apply to "practicing attorneys" who appear pro se. *Huffman v. Lindgren*, 81 F.4th 1016, 1021 (9th Cir. 2023).

[3] Pin citations to page numbers in the Complaint refer to the CM/ECF page numbers stamped across the top margin of the document.

[4] "In deciding a Rule 12(b)(6) motion," the Court may look "to the face of the complaint *and* the documents attached thereto." *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1134, 1137 (C.D. Cal. 2010) (emphasis added).

Plaintiff that, after a congressional amendment, § 81 "expressly state[d] that the Secretary [was] not required to approve contracts for legal services between federally recognized Indian tribes and their attorneys." *Id.* at 24. The Department thus declined to "take any action on [Plaintiff's] request." *Id.*

Plaintiff continued representing the Tribe until his services were terminated on May 22, 2020. *Id.* ¶ 19. Per the Fee Agreement, the Tribe had "the right to discharge [Plaintiff] at any time," though "[s]uch discharge [was] not [to] affect the [Tribe's] obligation to reimburse [Plaintiff] for costs incurred prior to such discharge." *Id.* at 22. Additionally, Plaintiff was "entitled to the reasonable value of legal services performed prior to [his] discharge," which were "to be paid by the [Tribe] from any subsequent recovery on claims covered" by the Fee Agreement. *Id.* Plaintiff submitted a final invoice to the Tribe. *Id.* ¶ 19. Calculating only fees accrued due to his $250 hourly rate, Plaintiff estimated he was owed approximately $5.8 million for his "almost 13 years of work." *Id.*

To establish and enforce his claim on a portion of the funds held by the Commission, Plaintiff sued the Commission in California state court.[5] *Id.* ¶ 20. Both factions of the Tribe intervened. *Id.* Eventually, the trial court dismissed the action for lack of subject matter jurisdiction. *Id.* The court reasoned that to determine the validity of the Fee Agreement—and thus decide whether Burley had the authority to sign it on behalf of the Tribe—the court would have to resolve the nonjusticiable tribal leadership dispute. *See id.* The California Court of Appeals affirmed the dismissal on the same grounds. *See id.* ¶ 21.

On June 24, 2023, Plaintiff sent a letter to three officials from the Department, including Defendants Haaland and Newland. In this letter, Plaintiff requested:

> [A] short letter clarifying that at the time Burley executed the Fee Agreement . . . , she was authorized to initiate lawsuits on behalf of the Tribe, given her BIA-designation at the time as a 'person of authority,' and that authority included signing the subject Fee Agreement for legal services . . . .

---

[5] Per Plaintiff, the Tribe is "not organized," meaning "there is no Tribal Court for Plaintiff to resort to." Compl. ¶ 22.

*Id.* at 12 (emphasis omitted). In a response signed by Defendant Dutschke (the "Department's Response"), the Department declined Plaintiff's request "to draft a letter in support of [his] assertion that [he was] entitled to attorney's fees for [his] work related to the [Tribe]." *Id.* at 60.

Plaintiff then initiated the instant action, suing Defendants in their official capacities. Plaintiff seeks to force Defendants to decide a "factual issue" not ruled on in state court: "whether the BIA's designation of Burley as a 'person of authority' within the Tribe . . . permitted her to execute the . . . Fee Agreement for the Tribe in 2007." *Id.* (emphasis omitted). In the alternative, he asks the Court to decide that question. *Id.* at 9. To that end, the Complaint includes claims (1) for declaratory relief, (2) to compel agency action, and (3) to set aside an arbitrary and capricious agency action. *See id.* at 6–9.

## LEGAL STANDARDS

### I.   Federal Rule of Civil Procedure 12(b)(1) — Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and thus have an obligation to dismiss claims for which they lack subject-matter jurisdiction. *Demarest v. United States*, 718 F.2d 964, 965–66 (9th Cir. 1983). The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). When a party files a 12(b)(1) motion, "there is a presumption of a lack of jurisdiction until the plaintiff affirmatively proves otherwise." *Orient v. Linus Pauling Inst. of Sci. & Med.*, 936 F. Supp. 704, 706 (D. Ariz. 1996).

Under Federal Rule of Civil Procedure 12(b)(1), a party may raise by motion the defense that the complaint lacks subject-matter jurisdiction via a facial or factual attack. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, such as the one here, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A court resolves a facial attack as it would a Rule 12(b)(6) motion: "Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are

sufficient . . . to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

## II.     Federal Rule of Civil Procedure 12(b)(6) — Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted." The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original).

To survive a motion to dismiss, then, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This review requires a context-specific analysis that involves the Court's "judicial experience and common sense." *Id.* at 679.

"In reviewing a Rule 12(b)(6) motion to dismiss, a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Wi-LAN Inc. v. LG Elecs., Inc.*, 382 F. Supp. 3d 1012, 1020 (S.D. Cal. 2019). Where a complaint does not survive scrutiny under 12(b)(6), the Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading could . . . cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

# ANALYSIS

Defendants challenge the Complaint's three causes of action on closely related grounds. First, Defendants argue that Plaintiff's attempt to compel agency action must be dismissed for lack of subject matter jurisdiction under 28 U.S.C. § 1361 (the Mandamus Act), and for failure to state a claim under § 706(1) of the Administrative Procedure Act ("APA"). *See* Mot. at 5. Next, Defendants contend that because the Complaint does not sufficiently plead a § 706(2)(A) claim, Plaintiff's request for review of the Department's Response must be dismissed pursuant to both Rule 12(b)(1) and Rule 12(b)(6). *See id.* at 9, 11. Finally, Defendants argue Plaintiff's declaratory judgment claim fails because 28 U.S.C. § 2201, the Declaratory Judgment Act, does not provide an independent cause of action. *See id.* at 12. The Court addresses each argument in turn.

## I. Claim to Compel Agency Action

Plaintiff seeks an injunction requiring "Defendants to clarify Burley's status as a 'person of authority' with respect to the Fee Agreement," an action Plaintiff claims the "BIA had a duty" to complete. Compl. ¶¶ 27, 29. This cause of action appears to rely on both the Mandamus Act, *see id.* ¶ 7, and § 706 of the APA, *see* Civil Cover Sheet at IV, ECF No. 1-1; Opp'n at 7 ("Plaintiff's claims are grounded on the BIA's violation of the APA . . . ."). In either event, "mandamus relief and relief under the APA are 'in essence' the same" when a litigant seeks to compel agency action. *R.T. Vanderbilt Co. v. Babbitt*, 113 F.3d 1061, 1065 (9th Cir. 1997) (quoting *Indep. Min. Co. v. Babbitt*, 105 F.3d 502, 507 & n.6 (9th Cir. 1997)). Prevailing on either type of claim requires the same showing. *See Plaskett v. Wormuth*, 18 F.4th 1072, 1081–82 (9th Cir. 2021). Consequently, the Court may "analyze the APA claim only" and decides to do so here. *Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022) (citing *R.T. Vanderbilt*, 113 F.3d at 1065).

Defendants argue Plaintiff's attempt to compel agency action must be dismissed on jurisdictional grounds and for failure to state a claim. *See* Mot. at 5. The Court rejects the first contention but accepts the second.

/ / /

### A. Subject Matter Jurisdiction

As § 706(1) applies to Plaintiff's request to compel agency action, Defendants' jurisdictional argument is dispatched with ease. While "the requirements for obtaining mandamus-type relief" are "jurisdictional in nature," *Plaskett*, 18 F.4th at 1082, the elements of an APA claim are not, *see Vaz*, 33 F.4th at 1135. Rather, "[a]ny deficiencies as to the APA claim go to the merits of that cause of action." *Plaskett*, 18 F.4th at 1082. Meanwhile, the Court may exercise subject matter jurisdiction over Plaintiff's § 706(1) claim by way of 28 U.S.C. § 1331, the federal-question statute. *See Vaz*, 33 F.4th at 1135.

### B. Failure to State a Claim

With its jurisdiction confirmed, the Court turns to Defendants' 12(b)(6) challenge. The APA allows courts to compel "unlawfully withheld or unreasonably delayed" agency action. 5 U.S.C. § 706(1). "A court can compel agency action under this section only if there is 'a specific, unequivocal command' placed on the agency to take a 'discrete agency action,' and the agency has failed to take that action." *Viet. Veterans of Am. v. Cent. Intel. Agency*, 811 F.3d 1068, 1075 (9th Cir. 2016) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63–64 (2004)). In other words, the agency must have "a clear, certain, and mandatory duty" to complete the action a litigant seeks to compel. *Plaskett*, 18 F.4th at 1082. And though a court may sometimes compel an agency "to take action upon a matter," courts cannot "direct[] *how* [the agency] shall act." *Id.* at 1081 (quoting *Norton*, 542 U.S. at 64).

Plaintiff argues the BIA was required to clarify Burley's status as a "person of authority" with respect to the Fee Agreement by three sets of statutory provisions. As discussed below, however, all three of Plaintiff's arguments fail.

First citing 25 U.S.C. § 2, Plaintiff contends the BIA has a "broad duty," Opp'n at 7, to "manag[e] . . . all Indian affairs and . . . all matters arising out of Indian relations," 25 U.S.C. § 2. This "broad power," Plaintiff continues, "necessarily includes the 'matter' . . . of the execution of Plaintiff's Fee Agreement by Burley." Opp'n at 7. The problem for Plaintiff is that any duties imposed by § 2—which even he repeatedly

characterizes as wide in scope—are quite broadly defined. Such an expansive statute does not contain the kind of "specific" and "unequivocal" command that Plaintiff needs to identify; courts are not "empowered to enter general orders compelling compliance with *broad statutory mandates*." *Norton*, 542 U.S. at 66 (emphasis added).

Plaintiff next points to 25 U.S.C. §§ 5329 and 5330, claiming they together create "a mandatory duty to monitor the performance of . . . self-determination contracts with federally-recognized Indian tribes to ensure compliance." Opp'n at 7 (emphasis omitted). Those provisions are a part of the Indian Self-Determination and Education Assistance Act ("ISDEAA"), through which the Secretary is directed "to enter into contracts . . . pursuant to which . . . tribes . . . provide services . . . that otherwise would have been provided by the Federal Government." *Salazar v. Ramah Navajo Chapter*, 567 U.S. 182, 185 (2012). These "self-determination" contracts contemplate services like "education and law enforcement." *Id.*

As with § 2, Plaintiff's reliance on § 5329 and § 5330 is misplaced. A district court has interpreted these provisions to impose "a nondiscretionary duty" on the Secretary to investigate complaints about relevant programs when the complaints "raise concerns about the safety and welfare of individual Indians." *Brown v. Haaland*, 604 F. Supp. 3d 1059, 1080 (D. Nev. 2022). But nothing in § 5329 nor § 5330 discusses a mandatory duty to confirm that an individual has the authority to contract for legal services on behalf of a tribe. Indeed, Plaintiff's own caselaw supports the opposite conclusion. *See Larry Martin*, 98 Interior Dec. 200, 206 (IBIA 1991) (explaining purpose of potentially mandated investigation "would be to determine whether a tribe's contract should be rescinded, *not to provide personal relief to an individual complainant*" (emphasis added)).

Finally, Plaintiff cites 25 U.S.C. §§ 5305 and 5325 for the proposition that Defendants are required to audit and examine the fees paid by the Tribe to Plaintiff. *See* Opp'n at 8. Plaintiff first notes that a "tribal organization may . . . expend funds provided under a self-determination contract" for the purpose of procuring "[p]rofessional services." 25 U.S.C. § 5325(k)(7). Next, Plaintiff points out that a tribe receiving such federal

financial assistance must keep records of their expenditures, *see id.* § 5305(a)(1), and that the Secretary must be given access to said records, *see id.* § 5305(b).  Plaintiff attempts to stitch these provisions together into a "mandatory duty to audit and examine the fees the [Tribe] paid to Plaintiff."  Opp'n at 8 (emphasis omitted).  But far from imposing a non-discretionary audit duty, § 5305(b) merely requires that the Secretary be able to *access* records.  And even were that not so, Plaintiff fails to explain how a duty to audit would clearly and unequivocally translate into the duty Plaintiff seeks to establish.

Plaintiff has not "assert[ed] that [Defendants] failed to take a discrete agency action that [they were] required to take."  *Norton*, 542 U.S. at 64 (emphasis omitted).  The Court therefore **GRANTS** Defendants' Motion as to the Complaint's claim for injunctive relief pursuant to Rule 12(b)(6).

## II.     Challenge to Arbitrary and Capricious Agency Action

Defendants next target the Complaint's third cause of action, in which Plaintiff asserts that the Department's Response constitutes an arbitrary and capricious action that the Court must hold unlawful pursuant to § 706(2)(A).  Compl. ¶ 31.  Defendants argue the Court lacks subject matter jurisdiction over this claim as, among other issues, the Department's Response was not a final agency action within the meaning of the APA.  *See* Mot. at 10.  Defendants are correct.

Unlike other aspects of an APA claim, "the final agency action requirement has been treated as jurisdictional" by the Ninth Circuit.  *San Francisco Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564, 571 (9th Cir. 2019).  An agency action is "final" under the APA when: (1) the action "mark[s] the consummation of the agency's decisionmaking process"; and (2) the action is "one by which rights or obligations have been determined, or from which legal consequences will flow."  *U.S. Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)).  Defendants contend the Complaint fails at the inquiry's second step.  *See* Mot. at 10.  The Court agrees.

/ / /

To meet the second finality requirement, an administrative decision must generally "impose an obligation, deny a right, or fix some legal relationship." *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 987 (9th Cir. 2006) (emphasis omitted) (quoting *Ukiah Valley Med. Ctr. v. F.T.C.*, 911 F.2d 261, 264 (9th Cir. 1990)).  Finality must be evaluated "pragmatic[ally] and "flexibl[y]." *Id.* at 982 (citation omitted).  Relevant considerations include "(i) whether the agency action has a 'direct and immediate effect on the complaining parties,' (ii) 'whether it has the status of law,' and ([iii]) 'whether it requires immediate compliance.'"  *SurvJustice Inc. v. DeVos*, No. 18-CV-00535-JSC, 2018 WL 4770741, at *10 (N.D. Cal. Oct. 1, 2018) (quoting *Oregon v. Ashcroft*, 368 F.3d 1118, 1146–47 (9th Cir. 2004) (Wallace, J., dissenting), *aff'd sub nom. Gonzales v. Oregon*, 546 U.S. 243 (2006)), *order amended on reconsideration*, 2019 WL 1434144 (N.D. Cal. Mar. 29, 2019).

The Department's Response does not meet these requirements.  Of the Department's actions mentioned in the Complaint, it is the designation of Burley as a person of authority that arguably affected the rights and obligations of certain entities.  *See, e.g.*, Compl. ¶ 4. Perhaps one could argue said action bore on the Tribe's obligations to Plaintiff.  But as far as the Court can tell, the Department has not changed its stance regarding the person-of-authority designation.  Indeed, the Complaint does not allege the Department retroactively revoked Burley's status or otherwise meddled in the legal relationship between Plaintiff and the Tribe.  Rather, Plaintiff challenges the Department's refusal "to draft a letter in support of [Plaintiff's] assertion that [he was] entitled to attorney's fees for [his] work related to the [Tribe]." *Id.* at 60.  Though an alternative answer might have been useful to Plaintiff, the Department's Response did not reconfigure any of the rights or obligations previously allocated between Plaintiff and the Tribe, nor did it create other new legal consequences.

In short, the Complaint does not allege a final agency action within the meaning of the APA.  Consequently, the Court **GRANTS** Defendant's Motion as to the Complaint's third cause of action pursuant to Rule 12(b)(1).

### III. Declaratory Judgment Claim

Defendants last turn to the Complaint's first-listed cause of action, which is for declaratory relief. *See id.* ¶¶ 23–24. Defendants argue this claim must be dismissed because the "Declaratory Judgment Act creates a remedy for litigants but is not an independent cause of action." Mot. at 12 (quoting *Renovate Am., Inc. v. Lloyd's Syndicate 1458*, No. 3:19-cv-01456-GPC-WVG, 2019 WL 6716735, at *5 (S.D. Cal. Dec. 10, 2019)). As Plaintiff's other causes of action fail, Defendants continue, the "declaratory relief claim must also be dismissed." *Id.* at 13. Once more, the Court agrees.

"The Declaratory Judgment Act does not provide a cause of action when a party . . . lacks a cause of action under a separate statute and seeks to use the Act to obtain affirmative relief." *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022). Of course, the Act is available "for defensive use against anticipated claims," *i.e.*, to "preempt a suit by a potential plaintiff . . . who[] *could* sue pursuant to an independent cause of action." *Id.* at 879 (emphasis added). In such cases, a "potential defendant in effect borrows the underlying cause of action that would be available to the potential plaintiff." *Id.* Here, however, Plaintiff does not suggest he is seeking declaratory relief relating to a cause of action Defendants might bring against him.

As Plaintiff is not attempting to use the Declaratory Judgment Act defensively, and the Complaint's other claims fail, the Court **DISMISSES** Plaintiff's first cause of action. *See id.* ("[Plaintiff's] suit is offensive, not defensive, and [plaintiff] lacks an independent cause of action, so the Declaratory Judgment Act provides no basis for relief."); *see also Rolle v. Robel*, No. CV-23-00336-PHX-SMM, 2024 WL 342457, at *6 (D. Ariz. Jan. 30, 2024) ("Plaintiff lacks a cause of action that would support Plaintiff's declaratory judgment claim because . . . all of Plaintiff's claims must be dismissed under Rule 12(b)(6)."); *Lorona v. Ariz. Summit L. Sch.*, LLC, 151 F. Supp. 3d 978, 997 (D. Ariz. 2015) (explaining plaintiff could pursue declaratory relief "only to the extent [it was a] proper form[] of relief for claims that survive the motion to dismiss").

///

# CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendants' Motion to Dismiss (ECF No. 11) and **DISMISSES** the Complaint **WITHOUT PREJUDICE**.[6]  As the Court cannot find that doing so would be futile, the Court also grants Plaintiff **LEAVE TO AMEND**. *See Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004) ("Dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment.").  Plaintiff **MAY FILE** an amended complaint <u>within twenty-one (21) days</u> of the date of this Order.  Any amended complaint must be complete by itself without reference to the original Complaint; any defendant not named and any claims not realleged in the amended complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012). ***If Plaintiff fails to amend within the time provided, the Court will enter a final Order dismissing this civil action.***  *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated: March 8, 2024

Hon. Janis L. Sammartino
United States District Judge

---

[6] As none of the Complaint's stated causes of action survive the Motion, the Court need not address the Parties' remaining arguments.  The Court will therefore not decide, among other issues, whether the Court has jurisdiction to determine if "factually the designation BIA gave Burley" provided Burley with "the authority to hire lawyers."  Opp'n at 12.